Garry, J.
Appeals (1) from a decision of the Workers’ Compensation Board, filed March 31, 2010, which directed Bethlehem Steel Corporation to produce certain evidence, and (2) from a decision of said Board, filed November 16, 2011, which, among other things, ruled that claimant’s workers’ compensation award was to be apportioned between Arcelor Mittal and Bethlehem Steel Corporation in accordance with claimant’s length of service with each employer.
Claimant was employed as a steel worker from 1965 until 2008. His initial employer, Bethlehem Steel Corporation, went bankrupt in 2003; thereafter, its assets were purchased by International Steel Group, which subsequently became Mittal Steel and then Arcelor Mittal. Throughout these transitions, claimant continued to work in the same facility and position until November 2008. Thereafter, he filed an occupational hear *1176 ing loss claim against Arcelor,[1] which sought apportionment of the claim from Bethlehem. Bethlehem controverted the claim on the ground that Arcelor had not satisfied the notice requirements of Workers’ Compensation Law § 49-ee (2). Following a hearing, a Workers’ Compensation Law Judge determined that claimant’s award was to be apportioned based on his length of service with Bethlehem and Arcelor. Bethlehem sought review before the Workers’ Compensation Board and, in March 2010, a Board panel determined that, if applicable, any apportionment was to be based on claimant’s length of service, but that further development of the record was warranted on the issue of Bethlehem’s actual knowledge of the injury. Bethlehem was directed to produce records of hearing tests conducted during claimant’s employment for this purpose. At subsequent hearings, counsel for Bethlehem represented that these records existed but could not be located, and the Workers’ Compensation Law Judge ultimately directed apportionment of the award. In November 2011, upon review, the Board panel found that Bethlehem had actual knowledge of claimant’s hearing loss and declined to reconsider its determination as to the method of apportionment. Bethlehem appeals from both the March 2010 and November 2011 determinations.
We affirm. Arcelor was “[t]he last employer in whose employment [claimant] was exposed to harmful noise” (Workers’ Compensation Law § 49-ee [1]) and is therefore liable for claimant’s total work-related hearing loss unless it establishes an apportionment claim against Bethlehem. As Arcelor concededly failed to comply with the statutory notice requirements for such a claim, Bethlehem is liable only if it had actual knowledge of claimant’s hearing loss (see Workers’ Compensation Law § 49-ee [2]; Matter of Woodruff v Goulds Pumps/ITT Indus., Inc., 18 AD3d 1063, 1063-1064 [2005]). The Board based its determination that Bethlehem did have such knowledge on the 2009 report of an examining physician who determined that claimant had a binaural hearing loss caused by work-related noise exposure during 44 years of employment, and upon claimant’s testimony, which the Board found credible. Claimant testified that he first noticed his hearing loss during his employment with Bethlehem. He stated that he was exposed to loud noise throughout his career, but received the most exposure while working for Bethlehem, which did not supply hearing protection to employees until the 1980s. At that time, Bethlehem also began conduct *1177 ing annual hearing examinations; claimant testified that he received the results of these tests but did not understand them. He was told for the first time that he had a hearing loss during an annual examination conducted after Bethlehem’s bankruptcy, while the facility was owned by International Steel Group.[2] The Board “is the sole arbiter of witness credibility” (Matter of Hammes v Sunrise Psychiatric Clinic, Inc., 66 AD3d 1252, 1252 [2009]; accord Matter of Richman v NYS Unified Ct. Sys., 91 AD3d 1014, 1015 [2012]). We find no basis to disturb its conclusion that this testimony credibly established that claimant’s hearing loss began at Bethlehem and that, as a result of its annual testing, Bethlehem had actual knowledge of the loss.
We further reject Bethlehem’s contention that the Board’s direction to produce its records of claimant’s hearing tests improperly shifted the burden of proof.[3] Where, as here, there is evidence that an employee’s hearing loss began while he or she worked for an employer who conducted regular hearing tests, such records necessarily constitute the best evidence — and are often the only evidence — of the employer’s awareness of the injury (compare Matter of Woodruff v Goulds Pumps/ITT Indus., Inc., 18 AD3d at 1064; Matter of Lash v General Motors Corp., 285 AD2d 917, 919 [2001], lv denied 97 NY2d 606 [2001]; Matter of Stratta v North Am. Cement Corp., 42 AD2d 884, 885 [1973], affd 34 NY2d 783 [1974]). As the records were in Bethlehem’s exclusive control, the Board did not err in directing their production, and properly drew a negative inference upon Bethlehem’s failure to produce them. We note that several adjournments were granted over a six-month period to allow Bethlehem to locate the records, and counsel repeatedly represented that they existed, but failed either to produce them or to provide any affidavits or other affirmative evidence demonstrating that Bethlehem had made a good faith effort to locate them. The Board’s resolution of this issue was within its broad authority to draw reasonable adverse inferences from an employer’s failure to produce evidence as directed (see Matter of Curtis v Xerox, 66 AD3d 1106, 1108 [2009]; Matter of Pache v Aviation Volunteer Fire Co., 20 AD3d 731, 734 [2005], lv denied 6 NY3d 705 [2006]). Moreover, as discussed above, claimant’s credible testimony constituted substantial evidence supporting the Board’s determination as to actual knowledge (compare Matter *1178 of Noto v Ford Motor Co., 301 AD2d 704, 705-706 [2003]). Accordingly, the Board properly concluded that Bethlehem had actual knowledge of claimant’s hearing loss, and Arcelor’s failure to comply with the statutory notice requirements did not preclude apportionment (see Matter of Woodruff v Goulds Pumps/ITT Indus., Inc., 18 AD3d at 1064; Matter of Lash v General Motors Corp., 285 AD2d at 918-919; Matter of Stratta v North Am. Cement Corp., 42 AD2d at 885).
Bethlehem next challenges the Board’s determination that apportionment should be based on claimant’s length of service rather than on the portion of his hearing loss caused by each employment (see Workers’ Compensation Law § 49-ee [2]). Upon appeal, Bethlehem contends that the degree of claimant’s preexisting hearing loss at the termination of his employment with Bethlehem could have been determined from reports of annual hearing tests conducted during his employment by Arcelor. However, “[t]he time that a claimant is exposed in each employment is a proper method of apportioning liability” for a work-related hearing loss resulting from more than one employment (Matter of Stratta v North Am. Cement Corp., 42 AD2d at 885; compare Workers’ Compensation Law § 44). Here, there were no hearing tests from either employer in the record when the Board determined that apportionment should be based on claimant’s length of service. Claimant had testified several months previously that Arcelor conducted annual hearing tests, but Bethlehem did not then request the results nor raise the claim that they should be used to determine the amount of claimant’s hearing loss. Instead, Bethlehem first requested Arcelor’s test results in June 2010, several months after the Board had determined the appropriate apportionment methodology and had continued the case solely to develop the record on the separate issue of Bethlehem’s actual knowledge. Accordingly, the Board did not err in determining that apportionment should be determined according to claimant’s length of service and in declining Bethlehem’s request for Arcelor’s testing records as untimely.
Rose, J.P., Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the decisions are affirmed, without costs.

. Arcelor assumed the liabilities of its two predecessors and, thus, for purposes of this proceeding, was claimant’s employer throughout the period after Bethlehem’s bankruptcy.

. International Steel Group owned the facility during the first two years after Bethlehem’s bankruptcy.

. Notably, the record reveals that the Board made this direction only after Bethlehem argued that Arcelor should have requested or produced this documentation, which Bethlehem had previously claimed did not exist.